618 P.2d 1230

**AALCO MANUFACTURING COMPANY,**
a Foreign Corporation, Petitioner,

v.

**CITY OF ESPANOLA, a Municipal
Corporation, Respondent.**

No. 12910.

Supreme Court of New Mexico.

Aug. 12, 1980.

Catron, Catron & Sawtell, John S. Catron, Santa Fe, for petitioner.

White, Koch, Kelly & McCarthy, C. Emery Cuddy, Jr., Daniel H. Friedman, Santa Fe, for respondent.

## OPINION

PAYNE, Justice.

Peggy Sue Sanchez and her mother sued the City of Espanola, Aalco Manufacturing Company and Tiano's Sporting Goods Store for damages arising from an accident in which a volleyball net standard fell and severely injured Peggy Sue's foot. The standard was manufactured by Aalco. Tiano's purchased the standard in the course of its business and sold it to the City of Espanola which used it in a city supervised recreation facility. A jury found the City liable for the injury under a negligence theory and found Tiano's and Aalco liable under strict products liability. Judgment was entered finding the three defendants jointly and severally liable.

The defendants cross-claimed against each other and the court assessed one half of the judgment against the City. The

other half was assessed jointly against Tiano's and Aalco, with Aalco being ordered to indemnify Tiano's for its portion of the assessment.

The trial court's fifty-fifty split was based on its finding that the injury was proximately caused, both by the City's negligent use of the apparatus and by Aalco's defective manufacture of it. The court concluded that Aalco and the City were both active tortfeasors and should be considered as joint tortfeasors under the Uniform Contribution Among Tortfeasors Act (Uniform Act), Sections 41–3–1 through 41–3–8, NMSA 1978, whereas Tiano's was not a joint tortfeasor under the Act because its liability is purely technical, founded not on negligence but derived solely from strict liability. Hence, the court assessed one half of the judgment against Aalco and Tiano's as a single entity and the other half against the City.

The City appealed the apportionment of the judgment, claiming it should pay only one third of the damages since there were three tortfeasors. The Court of Appeals agreed with the City and reapportioned the damages, requiring Aalco to pay two thirds and the City one third. Aalco's indemnification of Tiano's was not appealed. The Court of Appeals concluded that a defendant found liable under strict products liability is a joint tortfeasor under the Uniform Act and his liability is not merely technical but is founded on his failure to sell safe products to the public.

■ The confusion in apportionment is generated by the fact that the doctrine of strict liability and the Uniform Act are directed at different goals. The Uniform Act requires tortfeasors who share in causing an injury to share equally in paying for that injury. Its goal is equity among tortfeasors. The purpose behind strict products liability, on the other hand, is to allow an injured consumer to recover against a seller or manufacturer without the requirement of proving ordinary negligence. Its goal is to protect the injured consumer. As adopted by New Mexico in *Stang v. Hertz Corporation,* 83 N.M. 730, 497 P.2d 732 (1972), the Restatement (Second) of Torts § 402A (1965) accomplishes that goal by imputing fault for an injury caused by a product to the seller of that product, regardless of the presence or absence of negligence on his part. This is because "[i]n some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff." *Vandermark v. Ford Motor Company,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168, 171 (1964).

We held in *Stang, supra,* that the doctrine of strict liability in tort was evolved to place liability on the manufacturer of the defective product as the party primarily responsible for the injury. This liability has been extended to the wholesalers and retailers of the defective product.[1] As stated in *Vandermark, supra* :

> Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship.

37 Cal.Rptr. at 900, 391 P.2d at 172.

The extension of strict liability to non-negligent retailers provides two pockets from which the injured consumer can obtain relief, one being the usually local and more accessible retailer. The retailer may look to the manufacturer for indemnification for any loss he may suffer. This puts the risk of the manufacturer's insolvency on the retailer, but it is a risk that he is better able to foresee and protect against than the consumer.

Imputing liability to brand the non-negligent retailer a joint tortfeasor under the

---

1. Some courts have held contra. The Mississippi Supreme Court in *Sam Shainberg Company of Jackson v. Barlow,* 258 So.2d 242 (Miss. 1972), held, on facts essentially similar to those in the instant case, that the doctrine of strict liability in tort, § 402A of the Restatement of Torts Second, did not apply to non-negligent retailers. *See also R. Clinton Const. Co. v. Bryant & Reaves, Inc.,* 442 F.Supp. 838 (N.D. Miss.1977).

Uniform Act may create an unjust result. The non-negligent retailer is bootstrapped from being only an insurer of the manufacturer's liability to the plaintiff into carrying a portion of the burden of unrelated torts.

The doctrine of contribution is deeply rooted in the principles of equity, fair play and justice. *See e. g., Panichella v. Pennsylvania Railroad Company*, 167 F.Supp. 345 (W.D.Pa.1958); *Stark v. Posh Construction Company*, 192 Pa.Super. 409, 162 A.2d 9 (1960); *Fisher v. Diehl*, 156 Pa.Super. 476, 40 A.2d 912 (1945). The Uniform Act must be interpreted in light of these principles. It is not equitable to require Aalco to pay two thirds of the judgment. As stated in *Larsen v. Minneapolis Gas Company*, 282 Minn. 135, 163 N.W.2d 755, 764 (1968):

> It does not appear equitable to require one defendant to pay two-thirds of the verdict where the jury has determined that there were two distinct negligent acts which combined to cause the accident and that the defendant's liability is based on its responsibility for only one of those acts.

In the instant case there are two active torts involved: first, that of Aalco in the manufacture of the defective product, and second, the negligence of the City. Tiano's liability arose without having committed an active tort.

Had there been only the strict liability action, Aalco, as the party at the head of the distribution chain, would have had to bear the entire financial burden of the judgment. This is equitable because, while the retailer may be strictly liable to the consumer, the ultimate economic loss should be shifted to the manufacturer whose "active" conduct caused the injury, barring independent conduct on the part of the retailer. *See Farr v. Armstrong Rubber Company*, 288 Minn. 83, 179 N.W.2d 64 (1970); *Kerr v. Corning Glass Works*, 284 Minn. 115, 169 N.W.2d 587 (1969); *see also* Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Product Liability Cases*, 58 Minn.L.Rev. 723 (1974). The presence of another tort and its tortfeasor does not change Aalco's and Tiano's liability. Aalco remains ultimately responsible economically for the strict liability tort. The City is ultimately liable for its negligence. Two different torts, and two active tortfeasors, supports a fifty-fifty split of the judgment.

The Court of Appeals, by assessing one third of the damages against Tiano's and then requiring Aalco to indemnify, has effectively imputed a portion of the fault of the City to Tiano's and thence to Aalco, a result not intended in either § 402A or the Uniform Act. This application of the law would frustrate the intent of the Uniform Act since the more links in the chain of supply, the greater the disparity in payment between the active tortfeasors at either end of that chain. Under this theory, if there had been eight middlemen between the City and Aalco, Aalco would pay ninety percent and the City ten percent.

We recognize that the passive-active distinction utilized by the trial court to apportion damages may also lead to inequities if the passive tortfeasor is not entitled to indemnification. For example, if Tiano's had not been indemnified by Aalco for whatever reason, the apportionment then would have been City fifty percent, Aalco twenty-five percent, and Tiano's twenty-five percent, not a uniform contribution as required by the Act.

But, as stated in *Larsen, supra*, "[i]t does not seem reasonable that the [manufacturer] should ultimately be required to pay more of the verdict because the law has decreed that another must answer for his torts when he cannot." 163 N.W.2d at 765.

For the reasons stated, we reverse the Court of Appeals and reinstate the district court judgment.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, J., concur.

FEDERICI and FELTER, JJ., not participating.