**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2009-NMCA-013

Filing Date: December 30, 2008

Docket No. 27,877

BUDGET RENT-A-CAR SYSTEMS, INC.,

       Plaintiff-Appellant,

v.

BRIDGESTONE FIRESTONE NORTH
AMERICAN TIRE, LLC, a Delaware limited
liability company,

       Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY
Grant Foutz, District Judge

Civerolo, Gralow, Hill & Curtis, PA
William P. Gralow
Edward F. Messett
Denise Archuleta
Albuquerque, NM

for Appellant

Keleher & McLeod, P.A.
Arthur O. Beach
Lynn E. Mostoller
Albuquerque, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}** Plaintiff, Budget Rent-A-Car Systems, Inc. (Budget), appeals the district court's order dismissing its complaint against Defendant Bridgestone Firestone North American Tire, LLC (Bridgestone). Bridgestone filed motions to dismiss Budget's complaint, arguing

1

that Budget's claim was a subrogation claim, which was barred because it was not filed within the applicable statute of limitations. In response, Budget argued that its claim was for indemnity, not subrogation. The district court granted Bridgestone's motions to dismiss Budget's complaint. We reverse the district court order dismissing Budget's complaint against Bridgestone.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2}     Two individuals (Underlying Plaintiffs) rented a truck from Budget. While driving the truck on July 6, 2003, Underlying Plaintiffs were involved in a rollover accident and suffered injuries as a result. At that time, Budget retained an expert to inspect the truck and determine the cause of the accident. On August 26, 2003, Budget's expert issued a report on the investigation of the accident. The report stated that the accident was caused by a defective tire, which was manufactured by Bridgestone. In early 2004, Budget informed Bridgestone about the findings of its expert. Bridgestone conducted its own inspection of the tire and determined that the failure of the tire was due to an "impact break" and not the result of "a defect in either materials or workmanship."

{3}     On July 15, 2004, Underlying Plaintiffs filed suit against Budget for personal injuries suffered as a result of the accident. Underlying Plaintiffs alleged in pertinent part:

7.      Defendant Budget owed a duty to [Underlying] Plaintiffs to provide them with a product—a rental truck—free of defects.

8.      Budget breached this duty by providing [Underlying] Plaintiffs with a defectively designed or manufactured product.

9.      At all times the product was in substantially the same condition as when [Underlying] Plaintiffs received it.

10.     [Underlying] Plaintiffs were using the product in the manner Budget intended and were unaware of any defects in the product making it unsafe for its intended use.

11.     [Underlying] Plaintiffs' injuries were the direct and proximate result of their use of the product in its defective condition and [Underlying] Plaintiffs suffered damages and injuries in amounts to be determined at trial.

12.     Budget also failed to exercise ordinary care in the inspection and maintenance of the vehicle, which was a duty owed to [Underlying] Plaintiffs.

13.     As a direct and proximate result of this breach, [Underlying] Plaintiffs suffered injuries and damages in amounts to be determined at trial.

14.     Budget also breached implied warranties of merchantability and fitness, because the product was not fit for its ordinary purpose and did not conform to standards of

merchantability.

15.    As a direct and proximate result of the breach of these warranties, [Underlying] Plaintiffs suffered damages in amounts to be determined at trial.

**{4}** Budget engaged in settlement negotiations with Underlying Plaintiffs; Bridgestone chose to not participate in those negotiations. Budget settled with Underlying Plaintiffs for $72,161.00, on March 30, 2006, and secured a "Release in Full of All Claims and Rights" from Underlying Plaintiffs. The Release discharges Budget, Continental Casualty Company, their agents, and their representatives. In addition, the Release signed by Underlying Plaintiffs states, "We understand that this is all the money we will receive as a result of this accident."

**{5}** On August 23, 2006, Budget filed suit against Bridgestone alleging strict products liability, breach of warranty, and negligent design and manufacture based on its claim that the tire on the rented truck was defective and that the defective tire was the cause of the accident. Budget sought "reimbursement" in the form of a judgment for the settlement amount paid to Underlying Plaintiffs, plus pre-judgment interest, post-judgment interest, fees, and costs. Bridgestone filed a motion to dismiss the counts listed in the complaint "to the extent they seek to recover for the personal injuries of [Underlying Plaintiffs]." Bridgestone claimed that Budget had asserted a subrogation claim and that such a claim for the personal injuries of Underlying Plaintiffs was barred because it was filed more than three years from the date of the accident. Bridgestone filed a second motion to dismiss Budget's complaint, again arguing that Budget had filed a subrogation claim, and adding that because Budget voluntarily settled with Underlying Plaintiffs without a contractual obligation to do so, it had no viable subrogation claim. Budget responded.

**{6}** The district court held a hearing at which Bridgestone and Budget generally repeated the arguments contained in their pleadings. The district court allowed the parties to file supplemental briefs regarding indemnification and contribution. After considering the arguments of the parties and all of the pleadings filed by the parties, the district court granted Bridgestone's motions. Budget appeals.

**DISCUSSION**

**{7}** Bridgestone presented its motions as motions to dismiss. During the course of the proceedings, however, the district court was presented with a number of exhibits, including the report filed by Budget's expert, reports filed by Bridgestone, affidavits, and letters written by both parties. When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Rule 1-012(B) NMRA; *see Gulf Ins. Co. v. Cottone*, 2006-NMCA-150, ¶ 7, 140 N.M. 728, 148 P.3d 814 (stating that an appellate court will treat a district court order as a summary judgment order when matters outside the pleadings are considered on a motion to dismiss for failure to state a claim). Summary judgment is warranted if there are no genuine issues of material

3

fact in dispute and the party moving for summary judgment is entitled to judgment as a matter of law. *Id.* Bridgestone contends that Budget filed a subrogation claim and that the statute of limitations for such a claim prohibits the action at this time. Budget contends that its claim was one for indemnification and that the action remains viable.

**Subrogation**

**{8}** *Dairyland Ins. Co. v. Herman*, 1998-NMSC-005, ¶ 23, 124 N.M. 624, 954 P.2d 56 (internal quotation marks and citation omitted) states:

> Subrogation . . . is an equitable remedy of civil law origin whereby through a supposed succession to the legal rights of another, a loss is put ultimately on that one who in equity and good conscience should pay it. It is a remedy for the benefit of one secondarily liable, who has paid the debt of another and to whom in equity and good conscience should be assigned the rights and remedies of the original creditor.

**{9}** We agree that the allegations included in Budget's complaint could be read to fit within the definition of subrogation to the extent that Budget claimed that it paid a debt owed by Bridgestone to Underlying Plaintiffs and to the extent that Bridgestone is the entity that in equity and good conscience should pay the debt. Bridgestone also argues that, in Budget's response to Bridgestone's first motion to dismiss, Budget did not dispute that the claim was a subrogation claim, and, in fact, Budget "characterized its claim as one for subrogation." Bridgestone refers to a portion of Budget's response in which it argues that the statute of limitations for a subrogation claim would run from the date of the underlying accident, but the statute of limitations for a products liability claim runs from the date when a plaintiff knows, or should know, that he or she has been injured. Contrary to Bridgestone's contention, Budget did not characterize its claim as one for subrogation, but merely explained the difference between the statute of limitations for a subrogation and a products liability claim. Budget points out that its claim is for products liability due to a defective tire, and therefore, the statute of limitations did not run from the date of the accident as a subrogation claim would.

**{10}** We do agree, however, that because Budget continually denied that it was seeking subrogation and maintained that its claim was one for indemnification, Budget abandoned any claim for subrogation. *See Citizens Bank v. C & H Constr. & Paving Co.*, 89 N.M. 360, 366, 552 P.2d 796, 802 (Ct. App. 1976) (explaining that when a party takes a certain position in a proceeding and maintains that position, the party is not permitted to change to a contrary position). Therefore, to the extent Budget's claim could be considered a claim for subrogation, Budget is no longer able to maintain it under any circumstances.

**Indemnification**

**{11}** The question remains whether Budget's claim can be construed as a claim for

4

indemnification in addition to, or instead of, a subrogation claim. *See generally Trujillo v. Berry*, 106 N.M. 86, 90, 738 P.2d 1331, 1335 (Ct. App. 1987) (holding that the supplier of a defective product manufactured by another was entitled to seek indemnity from a manufacturer based on strict products liability).

**{12}** Traditional indemnification provides an indemnitee, who has been held liable for damages, the right to be made whole by a third party, such as the primary wrongdoer. *See In re Consol. Vista Hills Retaining Wall Litig.* (*Amrep*), 119 N.M. 542, 545, 893 P.2d 438, 441 (1995). A right to indemnification is based in equity and may arise without an agreement, by express or implied contract, or by operation of law in order to prevent an unjust result. *Id.* at 545-46, 893 P.2d at 441-42. Traditional indemnification applies in negligence, breach of warranty, and strict liability cases where the indemnitee is in the chain of supply of a product. *Id.* at 546, 893 P.2d at 442. Under traditional indemnification, a party who has been held liable for a wrong but whose conduct in causing the harm was "passive" can recover from a party who was "actively" at fault in causing the harm. *Id.* Active conduct occurs when the indemnitee "personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty, which the indemnitee had agreed to perform." *Id.* at 547, 893 P.2d at 443 (internal quotation marks and citation omitted). "Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another," or when a party is only the retailer in the chain of distribution of a defective product. *Id.* The passive/active principles do not apply in strict liability cases when determining the liability to a victim. *Id.* at 549, 893 P.2d at 445. However, the passive/active principles do apply in strict liability cases, and as a result, the party seeking indemnification may recover for damages due to a defective product from an active wrongdoer if that party's conduct was passive. *Id.* As discussed in *Amrep*, when a defective product is proven to have caused the harm, there remain factual questions such as whether liability is based on the passive negligent failure to discover the defect or the active negligent omission to correct a known defect. *Id.* at 548-49, 893 P.2d at 444-45. In our case, Budget essentially maintains it was a passive participant in a transaction involving a defective product and is therefore entitled to indemnification from Bridgestone.

**ANALYSIS**

**{13}** We now turn to the specific arguments made by the parties. Bridgestone, relying on Restatement (Third) of Torts: Apportionment of Liability § 22(a) (2000) (Restatement), claims that in order to state a claim for indemnification, Budget was required to allege in its complaint that both Budget and Bridgestone owed a duty to Underlying Plaintiffs, that Budget discharged Bridgestone's liability in whole or in part by settlement or discharge, and that Bridgestone is actually or primarily liable for the injuries to Underlying Plaintiffs.

**{14}** The Restatement states:

5

(a)     When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:

(1)     the indemnitor has agreed by contract to indemnify  the indemnitee, or

(2)     the indemnitee

(i)     was not liable except vicariously for the tort of the indemnitor, or

(ii)     was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.

In other words, under the Restatement, the right to seek indemnification arises when one party discharges the liability of another party "in whole or in part" by settlement or discharge of judgment. *See generally N.M. Pub. Sch. Ins. Auth. v. Gallagher & Co.*, ___-NMSC-___, ¶¶ 22-26, ___ N.M. ___, ___ P.3d ___ (No. 30,643, Nov. 26, 2008) (discussing general principles concerning indemnity).

**{15}**     First, Bridgestone claims that the wording in Budget's complaint was not sufficient to bring a cause of action for indemnification because Budget did not include all of the elements of indemnification. In addition to the Restatement, Bridgestone cites to various cases in support of its argument that in order to bring a claim for indemnification, Budget was required to allege in its complaint all of the elements of indemnification, including the "element" that Bridgestone's liability was discharged, in whole or in part, by settlement or discharge of judgment. We do not read the authorities cited by Bridgestone as requiring that the complaint contain such a specific allegation. For example, Bridgestone relies on *Rio Grande Gas Co. v. Stahmann Farms, Inc.*, 80 N.M. 432, 457 P.2d 364 (1969), in which our Supreme Court held that one joint tortfeasor could not recover from a second joint tortfeasor based on contribution or indemnity where the law does not allow contribution among joint tortfeasors and that indemnification is not available when one joint tortfeasor is in pari delicto with the other. *Id.* at 434, 437, 457 P.2d at 366, 369. We find no discussion in *Rio Grande Gas Co.* that would support Bridgestone's claim that Budget was required to allege in its complaint that Bridgestone's liability was discharged.

**{16}**     Furthermore, as discussed above, the motions to dismiss were converted to motions for summary judgment. Therefore, arguments concerning the sufficiency of the complaint are not dispositive when deciding whether the district court's decision was correct. Instead, we must decide whether, based on all of the evidence that was presented to the district court, there remain genuine issues of material fact to be decided. In cases involving summary

6

judgment, we view all pleadings and other matters that were presented to and considered by the district court in the light most favorable to allow a trial on the merits, and we construe all reasonable inferences in favor of the party against whom summary judgment was entered. *See Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 7, 140 N.M. 205, 141 P.3d 1259.

**{17}**     As we have stated, Bridgestone bases its argument on Section 22 of the Restatement, claiming that Budget did not satisfy the relevant requirements:  that  Budget discharged the liability of Bridgestone in whole or in part by settlement or discharge of judgment, and Bridgestone has agreed by contract to indemnify Budget; or that Budget was not liable except vicariously for Bridgestone's tort; or that Budget was not liable except as a seller of a product supplied to Bridgestone.  Budget presented evidence that it was a supplier of a product manufactured by Bridgestone.  Even if we were to adopt Section 22 of the Restatement as New Mexico law, we do not agree with Bridgestone. *See Yelin v. Carvel Corp.*, 119 N.M. 554, 556, 893 P.2d 450, 452 (1995) (noting that indemnification principles apply to strict liability cases involving parties in the chain of supply of a product).  In addition, Budget presented evidence that the tire, manufactured by Bridgestone, was defective and was the cause of the accident in which Underlying Plaintiffs suffered injuries.  The evidence presented to the district court was therefore clearly sufficient to raise a genuine issue of fact as to whether Budget qualified for indemnification under the Restatement's third example as a supplier of a defective product manufactured by another.

**{18}**     As to Bridgestone's argument that Budget did not discharge Bridgestone's potential liability to Underlying Plaintiffs, we are not persuaded.  Bridgestone argues that another requirement of the Restatement—that Budget discharged Bridgestone's potential liability to Underlying Plaintiffs—was not satisfied.  Bridgestone claims that the release obtained by Budget did not extinguish Bridgestone's potential liability, and therefore, Underlying Plaintiffs could possibly seek to recover additional damages from Bridgestone.  Comment b to Section 22 explains that a party seeking indemnification may extinguish the liability of the third party "by a settlement with the plaintiff that by its terms *or by application of law* discharges the indemnitor from liability."  Restatement*, supra*, § 22, at 272 (emphasis added).  In this vein, the Oregon Court of Appeals has declared that discharge "must operate to protect [a] defendant against a claim by [the original plaintiff]" on the same issue that was litigated between the original plaintiff and the party seeking indemnification. *Moore Excavating, Inc. v. Consol. Supply Co.*, 63 P.3d 592, 595 (Or. Ct. App. 2003) (internal quotation marks and citation omitted).  In *Moore*, the original plaintiff sued the party seeking indemnification for negligence. *Id.* at 593-94.  The Oregon court concluded that the party seeking indemnification did not provide evidence that it "bought peace for defendant in a way that is legally binding on the third party." *Id.* at 595-96 (internal quotation marks and citation omitted).

**{19}**     It thus appears that the question before us is not whether the release itself achieves discharge because it was possible for Budget to discharge Bridgestone's debt even without a release if Budget's settlement made it legally impossible for Underlying Plaintiffs to bring suit against Bridgestone on the same issues that Budget settled.  The question is also not

7

whether there is evidence to suggest that Underlying Plaintiffs have no interest in pursuing suit against Bridgestone. *See id.* at 595. The question is, as a matter of law, can Underlying Plaintiffs maintain a suit against Bridgestone for products liability after settling with Budget? In a defective-product case in New Mexico, the supplier of the product is liable for one hundred percent of the plaintiff's injuries, even if the supplier was without fault. *See Aalco Mfg. Co. v. City of Española*, 95 N.M. 66, 67, 618 P.2d 1230, 1231 (1980). The supplier is then entitled to proceed against the manufacturer to obtain indemnification. *See id.* Underlying Plaintiffs settled with Budget on the issue of product liability, and Budget paid one hundred percent of the liability for the allegedly defective product. *Id.* As a result, there is no more recovery available to Underlying Plaintiffs from Bridgestone as related to product liability. Therefore, if Budget can establish that the tires were in fact defective, it sufficiently discharged Bridgestone's debt to Underlying Plaintiffs for products liability as a matter of law, and Budget is entitled to indemnification.

**{20}**   To summarize, it is proper to consider Budget's claim as one for indemnification. Because there remain issues of fact as to whether Budget met the legal requirements for an indemnification claim, summary judgment was improper.

**Statute of Limitations**

**{21}**   The parties dispute what specific statute of limitations is applicable to Budget's claims. Budget brought a claim for indemnification. The statute of limitations for Budget's indemnification claim began to run from the date that Budget paid the settlement to Underlying Plaintiffs. *See*, *e.g.*, Maurice T. Brunner, Annotation, *When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, § 4[a], at 881-86 (1974) (citing numerous cases from many jurisdictions for the proposition that a claim of indemnity accrues at the time of payment of the underlying claim, payment of a judgment, or payment of a settlement by the party seeking indemnity); *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990) (affirming that an indemnity action runs from the payment of an underlying claim, payment of judgment, or settlement, and not from the time that the underlying damage occurs). Budget paid the settlement on March 30, 2006, and filed its complaint on August 23, 2006, less than five months after the settlement was paid. We hold that Budget brought its claims well within any statute of limitations provided by New Mexico law. *See*, *e.g.*, NMSA 1978, §§ 37-1-1 to -30 (1880, as amended through 1995).

**CONCLUSION**

**{22}**   Budget properly pled a cause of action against Bridgestone for indemnification. As discussed, there remain genuine issues of material fact to resolve with respect to Budget's claim for indemnification. We therefore reverse the district court's grant of summary judgment to Bridgestone and remand for reinstatement of Budget's complaint and for further proceedings consistent with this opinion.

{23}    IT IS SO ORDERED.

_____
                          MICHAEL E. VIGIL, Judge

WE CONCUR:

_____
JAMES J. WECHSLER, Judge


_____
CELIA FOY CASTILLO, Judge


Topic Index for *Budget Rent-a-Car Systems, Inc. v. Bridgestone*, No. 27,877

**CP**        **Civil Procedure**
CP-MT        Motion to Dismiss
CP-SJ        Summary Judgment
CP-SR        Subrogration
CP-TL        Time Limitations

**RE**        **Remedies**
RE-ID        Indemnification
RE-SB        Subrogation

**TR**        **Torts**
TR-PR        Products Liability

9